Baldwin, J.
It is perfectly well settled, and has been very properly conceded in the argument, that a surety is not absolved by the want of diligence on the part of the creditor in regard to his demand against the principal debtor. A defence on the ground of mere laches would, indeed, be inconsistent with the relation of the parties. The obligation of a surety is not conditional, but absolute. His undertaking to pay is not in the event of the inability or unwillingness of the principal, but at all events, and under all circumstances, as much so as if he were himself the sole debtor. Such is the form of his obligation, (unless specially qualified,) whether separate or joint, and such its true intent and meaning ; and it is founded upon a lawful and sufficient consideration, the credit given to the principal by his procurement. It is the duty of the surety, as well as the principal, to see to the payment of the money, and the forbearance of the creditor is a tacit indulgence given to both, in which, the acquiescence of the one is equally significant with that of the other.
Hence it is, that if the obligation be several, the creditor may pursue the surety only, that if it be merely joint, he may bring his action against the survivor, or the representative of the deceased, at his option, as if both were principals; that after a several judgment against the principal, he need not sue out execution thereupon, but may pursue and coerce payment from the surety; that upon a joint judgment against both, he may cause execution to be levied at his pleasure upon the person or property of either; that he may pur *524 sue the surety personally, notwithstanding a collateral surety given by him or his principal.
It follows that though a discharge of the debt, whether principal or surety, is available for either, yet that the surety can have no peculiar equity against the creditor to be absolved from his obligation, arising directly from the mere relation between them; but that such equity must be derived from the equities of the surety against his principal, and the infringement thereof by the conduct of the creditor. If the remedies or the rights of the surety against his principal be destroyed or defeated by the creditor, that furnishes a plain equity on the part of the surety against the further pursuit of the creditor; which is either absolute, or to the extent of the injury he has sustained.
The remedies of the surety against his principal are, 1. To pay the debt, and recover the same back from the principal, which he may do by action, or in most cases after judgment or execution against him, by the summary statutory proceeding by motion. 2. If he is apprehensive of suffering by reason of the forbearance of the creditor, he may file his bill in chancery against the principal to compel him to make payment himself to the creditor. 3. Though, independently of statutory provision, the surety is not absolved from his obligation, by the refusal of the creditor to sue the principal, after having been requested by the surety to do so, yet the latter may, by his bill in equity, invoke the authority of that forum to compel the creditor to bring his action against the principal, upon being indemnified against the consequences of risk, delay and expense; it being reasonable that such an act of benevolence should be extended to the surety, when it can be done without prejudice to the creditor. This exercise of equitable jurisdiction, though in form against the creditor, is substantially a remedy for the surety against his principal; the proceeding at law, though conducted by the cre *525 ditor, being in truth for the benefit of the surety. 4. A statutory remedy is provided in certain cases, for the procurement by the surety of an action against his principal; authority being given to sureties in bonds, bills or notes for the payment of money, to require, by a written notice to the creditor, that he shall bring suit thereupon, and proceed with due diligence to recover the money, on pain of incurring, in case of his failure to do so, the exoneration of the surety. 1 Rev. Code, ch. 116, § 6, p. 461.
Now, as the engagement of the surety is only coextensive with that of his principal, and his equities against him arise altogether out of non-performance of the latter, it follows that the creditor has no right to alter the terms of his contract with the principal, to the prejudice of the surety, without his consent. If, therefore, the creditor, without such consent, makes an obligatory agreement with the principal, by which time for payment is extended to him, so as to tie the hands of the creditor from proceeding in the interval to enforce the original contract, the consequence is, that the remedies of the surety against his principal are for the same period suspended, so as to expose him to a hazard of loss not contemplated by his undertaking: and this is enough to absolve him from his obligation, without enquiry into the question of actual loss.
And as regards the rights of the surety against his principal, he is plainly entitled to expect., not only that the principal shall save him from harm, by exempting him from payment of the debt, or if that has not been done, by reimbursing him when he has paid it; but, moreover, that the principal shall allow him the benefit of the means of payment, which the latter has placed in the hands or within the power of the creditor. The surety has therefore a right to enforce against his principal all securities which the latter has given to the creditor, whether when the debt was contracted or subse *526 quently; for the purpose of reimbursement to the surety, if payment has been made by him, or without, for the purpose of causing actual payment to be made: and it is not in the mouth of the creditor to object in the one case, or the other, to the surety’s standing precisely in his shoes. On the contrary, the creditor, in relation to such securities, may be said, with truth, to be the trustee of the surety, and if he acts unfaithfully, he not only fails in his duty as such, but violates the rights of the surety as against his principal. If, therefore, he releases, or perverts, or defeats such securities, he exempts the surety to the extent of the loss thereby occasioned.
A fi. fa. levied at the suit of the creditor, upon goods of the debtor, is unquestionably a security for the debt, it is a direct appropriation by authority of law, of specific property of the debtor, for the purpose of satisfying the demand. The lien thereby created, is substantial and enduring, as much so as a mortgage or a pledge ; and can be defeated only by the act of the creditor; for unless he interposes and releases or restores the goods, the money, to the value of the levy, will inevitably be made either out of the goods or out of the sheriff. It has even been held, that the release or restoration of the goods by the creditor, operates at law as a discharge of the judgment, at least without the agreement of the debtor express or implied to the contrary; and when the surety is also a party to the judgment, he cannot, without his own consent, be affected by such agreement of the principal, and is discharged both at law and in equity; and when he is not a party to the judgment, though he is not discharged at law, he is in equity, to the extent of the value of the goods.
But the delivery of the fi. fa. to the sheriff is no security for the debt. It is only a step in the prosecution of the demand by legal process, as is equally true of the institution of the suit, the recovery of the judgment, and the issuing of the execution. And as the creditor *527 owes to the surety no duty of active diligence, he may omit to bring suit, or dismiss it after it is brought; or after recovery of judgment, he may decline suing out execution, or to place it in the hands of the sheriff, or to cause it to be levied, or he may direct it to be levied only in a certain event. And why may he not recall or suspend the execution before it has been levied ? In what respect does that differ substantially from any other negligent, or injudicious, or indulgent prosecution of his demand ?
The delivery of the execution to the sheriff is not, properly speaking, a lien upon the goods of the debtor: It is the levy which makes the lien; that, it is true, has relation, to some extent, (i. e. as against mesne purchasers, but not as against other execution creditors,) to the delivery to the sheriff, but in like manner, and to the like effect, and upon the same policy that a judgment lien on lands has relation to the first day of the term. There can be no relation of a judgment lien without a judgment, and so there can be no relation of a levy lien without a levy.
If the creditor, by recalling or suspending an execution against the principal debtor, which has come to the hands of the sheriff, violates the rights of the surety, it cannot be because he thereby releases a security for the debt which he had obtained from the principal; but because he has failed to obtain such a security by a due course of proceeding; and that would be to require of him an active and judicious diligence in the prosecution of his demand. And such required diligence would on the other hand encourage supineness and negligence on the part of the surety, who instead of performing his duty of paying the debt, or causing it to be paid by his principal, would be tempted to lie in wait for some slip or indiscretion on the part of the creditor, and even to stimulate his principal to solicit from the creditor an imprudent indulgence. Such a principle would in ef *528 feet destroy the discretion and impair the rights of the creditor. He would be obliged to disregard all the dictates of humanity in the pursuit of his debtor ; he could not venture to exercise his judgment in the management of his process, though a timely indulgence might accomplish what would be beyond the reach of a rigorous prosecution. It is a common practice for the clerks of Courts to issue executions on judgments, and for the sheriffs to take them out of the office, without waiting for the directions of the plaintiff or his attorney, and it may sometimes happen, contrary to the desire of the creditor. Is he to be thereby debarred from recalling or suspending the process. The law authorizes the plaintiff, though execution has come to the hands of the sheriff, to sue out other and different process of execution. Is he to exercise this privilege at the hazard of losing his debt by the supposed destruction thereby of a supposed contingent, uncertain, precarious and fleeting lien? Suppose the creditor has reason to believe that the goods in possession of the debtor are encumbered or subject to a paramount title, is he to act at his peril, in instructing the sheriff not to take them in execution ?
I am for adhering to the decisions of this Court in M’Kenney v. Waller, 1 Leigh 434, and Alcock v. Hill, 4 Leigh 622; which have not been shaken by any subsequent adjudication; and which establish a principle that furnishes a safe and certain guide. To overrule them would give rise to much litigation; and the present case is a strong illustration of the evil. Here a surety, though cut off from no remedy, is seeking to be discharged from his obligation, by speculative opinions of witnesses as to the probability that the principal had property sufficient to discharge the debt in part, if the fi. fa. had been levied, without any specification or description of the property, or any information in regard to the validity of the title.
*529 I think the decree of the Circuit court ought to be reversed, the injunction dissolved and the bill dismissed.
The other Judges concurred in the opinion of Baldwin, J.
Decree reversed and bill dismissed.